[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10428
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-00198-MW-CJK

LIONEL ROBINSON,

Petitioner-Appellant,

versus

STATE ATTORNEY FOR FLORIDA,

Respondent,

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent - Appellee.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____

(April 6, 2020)

Before GRANT, LUCK and FAY, Circuit Judges.

PER CURIAM:

Lionel Robinson appeals the district court's denial of his 28 U.S.C. § 2254 petition.  We affirm.

## I. BACKGROUND

In May 2012, a Florida jury found Robinson guilty of robbery with a firearm and tampering with evidence.  The state circuit court adjudicated Robinson guilty and sentenced him to 30 years in prison for the robbery count and 5 years in prison for the evidence tampering count, to be served concurrently.  In October 2013, the Florida First District Court of Appeal ("First DCA") affirmed the judgment. *Robinson v. State*, 123 So. 3d 565 (Fla. Dist. Ct. App. 2013) (Table).

In October 2014, Robinson formally retained postconviction counsel David Jay Bernstein.  The terms of Bernstein's representation provided that he was "to research, prepare, and file a [Florida Rule of Criminal Procedure 3.850] Motion; reply to any government answer; and file objection to magistrate judge's Report and Recommendation if necessary"; the agreement did not mention a federal remedy.  According to Robinson, he wrote Bernstein on October 24, 2014, and November 18, 2014, to ask why Bernstein had not contacted him or his family; Bernstein did not directly respond to those letters.  On November 24, 2014, Bernstein filed a state habeas petition pursuant to Florida Rule of Appellate Procedure 9.141 in the First DCA, alleging ineffective assistance of appellate counsel.  Bernstein mailed Robinson a copy of the pleading on December 4, 2014.

2

The First DCA denied the petition. *Robinson v. State*, 152 So. 3d 571 (Fla. Dist. Ct. App. 2014) (Table).

After the Rule 9.141 petition was denied, Bernstein prepared and filed Robinson's original Rule 3.850 motion on February 12, 2015.  Bernstein provided Robinson with a copy of the pleading on March 20, 2015.  On March 27, 2015, Robinson wrote Bernstein concerning "the status of 9.141"; Bernstein did not respond.  On July 24, 2015, Bernstein filed an amended Rule 3.850 motion adding an additional ground for relief.  The state circuit court subsequently dismissed the original and amended motions for lack of proper verification.  On July 31, 2015, Bernstein mailed Robinson an amended Rule 3.850 motion and instructed him to sign the oath and return it.  Robinson signed and returned the verification to Bernstein's office on August 4, 2015.

Upon returning to his office after tending to personal matters and being notified that Robinson had executed the necessary oath, Bernstein contacted the Assistant State Attorney and obtained the State's consent to an extension of time for Robinson to file his verified Rule 3.850 motion and the State's waiver of any state-law limitations defense to the late filing.  The state circuit court granted the extension of time; on February 3, 2016, Bernstein filed the second amended Rule 3.850 motion, which the state circuit court considered as timely filed.  On June 20, 2016, the state circuit court denied relief on the merits.

3

Bernstein wrote Robinson on June 28, 2016, advising him of the denial of his postconviction motion.  Bernstein stated that he could not identify a good-faith basis to appeal; however, he informed Robinson of his right to appeal *pro se*.  Bernstein wrote that "this letter will mark the end of this firm's representation of you in this matter."  According to the letter of July 18, 2016, Bernstein mailed Robinson "all motions, answers and court orders" needed to file an appeal.  Robinson appealed *pro se*; the First DCA summarily affirmed and the mandate issued on April 18, 2017.  *Robinson v. State*, 230 So. 3d 437 (Fla. Dist. Ct. App. 2017) (Table).

Robinson wrote Bernstein on April 5, 2017, and April 21, 2017, to inquire about the status of the state habeas petition; on April 28, 2017, Bernstein responded and informed Robinson of all relevant filing dates and deadlines.  On May 15, 2017, Robinson contacted the First DCA to inquire as to the status of his Rule 9.141 petition; the First DCA replied three days later stating that it had denied that petition on December 10, 2014.

On July 31, 2017, Robinson filed the instant *pro se* habeas corpus petition pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  He acknowledged that his petition was filed more than one year after his judgment and sentence for robbery with a firearm and evidence tampering had become final.  However, he argued that he was entitled to

4

rely on the doctrine of equitable tolling because his postconviction counsel had in effect abandoned him and had allowed his federal time to expire before filing a timely motion for postconviction relief.   He attached copies of his correspondence with Bernstein, as well as other documents.  The State moved to dismiss the petition as untimely.

A magistrate judge issued a report and recommendation ("R&R"), recommending that Robinson's motion be dismissed as time barred.  As to whether Robinson had demonstrated "extraordinary circumstances" such that he was entitled to equitable tolling, the judge found that Bernstein had not abandoned Robinson as he alleged.  Regarding the specifics of Bernstein's conduct, the judge noted that:

> Bernstein frequently communicated with [Robinson] and filed necessary pleadings on his behalf throughout his representation. Bernstein made two errors – failing to have [Robinson] sign and properly verify the original Rule 3.850 motion in February 2015, and failing to discover that [Robinson] returned the signed verification in August 2015.  These errors, however, amount to simple negligence or excusable neglect, not abandonment, bad faith, dishonesty or other misconduct rising to the level of an "extraordinary circumstance".

The judge noted that Robinson relied heavily on a third alleged error—that Bernstein had failed to promptly notify him that his state habeas petition had been denied in December 2014; however, the judge found that, even assuming that Robinson could prove the allegation, such conduct was merely negligent at worst.

5

As to whether Robinson's allegations demonstrated that he had diligently pursued his remedy, the magistrate judge found that:

> A reasonably diligent prisoner who suspected, as [Robinson] did, that counsel forgot to notify him of an important dispositive order, and who had all the case information necessary to make an inquiry himself with the clerk of court, would have made that effort far prior to the time [Robinson] did. [Robinson] waited over two years - until May 15, 2017 - to contact the First DCA to confirm his suspicion. Moreover, once Bernstein confirmed to [Robinson] in his April 28, 2017, letter that the state habeas petition was denied on December 10, 2014, and that [Robinson's] federal habeas limitations period expired in early 2015, [Robinson] inexplicably waited another 2½ months, until July 31, 2017, to file his federal petition.

Accordingly, the judge concluded that Robinson had not been reasonably diligent. In light of his findings, the judge stated that an evidentiary hearing would serve no purpose because "the specific, non-conclusory facts and documents he proffers, even if true, are not enough to make his petition timely under [28 U.S.C.] § 2244(d)."

Robinson filed objections to the R&R, generally restating his arguments. The district court adopted the R&R over his objection and dismissed Robinson's motion. Following the dismissal of his motion, Robinson filed a notice of appeal.

We issued a certificate of appealability as to the following issues: 1) whether the district court erred in its determination that Robinson was not entitled to equitable tolling of the statute of limitations period; and 2) whether the district court abused its discretion when it denied Robinson an evidentiary hearing.

6

## II. DISCUSSION

### A. Equitable Tolling

We review *de novo* a district court's decision to dismiss a 28 U.S.C. § 2254 petition and its decision to deny equitable tolling. *San Martin v. McNeil*, 633 F.3d 1257, 1265 (11th Cir. 2011). However, we review the district court's findings as to relevant facts, including the petitioner's diligence, only for clear error. *Id*. "Under this standard, we must affirm a district court's findings of fact unless 'the record lacks substantial evidence' to support them." *Id*. (quoting *Lightning v. Roadway Express, Inc.*, 60 F.3d 1551, 1558 (11th Cir. 1995)).

AEDPA limitations period may be equitably tolled only if a prisoner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814 (2005)). These "are not blended factors; they are separate elements, both of which must be met before there can be any equitable tolling." *Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1225 (11th Cir. 2017). The burden for proving equitable tolling "rests solely on the petitioner" who cannot rely on "[m]ere conclusory allegations," which "are insufficient to raise the issue of equitable tolling." *San Martin*, 633 F.3d at 1268.

Equitable tolling is an extraordinary remedy that is applied sparingly. *Arthur v. Allen*, 452 F.3d 1234, 1252 (11th Cir. 2006).

In *Cadet*, we discussed "the appropriate standard for gauging when attorney error amounts to an extraordinary circumstance." *Cadet*, 853 F.3d at 1221. We recognized that "attorney negligence, even gross or egregious negligence, does not by itself qualify as an 'extraordinary circumstance' for purposes of equitable tolling; either abandonment of the attorney-client relationship . . . *or* some other professional misconduct *or* some other extraordinary circumstance is required." *Id*. at 1227. We explained that "while a petitioner is bound by his attorney's negligent mistakes, he is not bound by the actions or inactions of an attorney occurring after the attorney has severed the principle-agent relationship by abandoning his client." *Id*. Abandonment is illustrated by not keeping a client updated on essential developments, not responding to a client's questions or concerns, and severing communication with a client. *Id*. at 1234. Other examples of qualifying attorney misconduct include, but are not limited to, "bad faith, dishonesty, divided loyalty, and mental impairment." *Id*. at 1236. "In considering whether the conduct of counsel was extraordinary, we will not dissect the continuing course of conduct in which counsel engaged, but rather view counsel's behavior as a whole." *Downs v. McNeil*, 520 F.3d 1311, 1323 (11th Cir. 2008).

8

Nothing in the record suggests that Bernstein effectively "severed the principle-agent relationship by abandoning his client." *See Cadet*, 853 F.3d at 1227. Rather, the record indicates that Bernstein did exactly what he was hired to do—file a Rule 3.850 motion in state court and pursue that remedy to the fullest extent possible. After learning that Robinson's original and amended Rule 3.850 motions had been dismissed for lack of verification, Bernstein requested that Robinson sign an oath so that the motion could be properly filed. Bernstein then properly filed Robinson's Rule 3.850 motion, which the state court denied on the merits, and he informed Robinson of the outcome. In doing so, Bernstein not only fulfilled the terms of his engagement, but ensured that Robinson was kept abreast of the status of his case as it progressed. This does not resemble the sort of scenario imagined in *Cadet*, in which we stated that an attorney might abandon his client by severing all communication and failing to update his client. *Id.* at 1234.

That is not to say that Bernstein's representation was flawless; indeed, taking Robinson's allegations as true, Bernstein arguably was negligent on several occasions, such as when he did not immediately notify Robinson that his state habeas petition had been denied, or when he did not acknowledge that Robinson had provided the requested oath until Robinson followed up with him by phone. However, as we have acknowledged, negligence, even gross or egregious negligence, does not, by itself, rise to the level of abandonment. *Id.* at 1227.

Given that Bernstein appears to have generally attempted to keep Robinson informed regarding the status of his case, and, moreover, that he ultimately fulfilled the terms of his representation, his conduct is not of the kind that would indicate attorney abandonment. Accordingly, Robinson has failed to prove his alleged extraordinary circumstance, and it is unnecessary for us to consider whether Robinson was adequately diligent or not. *See id.* at 1225.

## B. Evidentiary Hearing

A petitioner has the burden to show the necessity for an evidentiary hearing. *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984) (en banc). The decision as to whether to hold a hearing on equitable tolling is discretionary; thus, appellate courts do not reverse that decision unless the discretion was abused. *Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). A court abuses its discretion only if it "applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Chicago Tribune Co. v. Bridgestone/Firestone Inc.*, 263 F.3d 1304, 1309 (11th Cir. 2001). If a habeas petition does not allege enough specific facts that, if they were true, would warrant relief, the petitioner is not entitled to an evidentiary hearing. *Chavez*, 647 F.3d at 1060-61.

Here, there is no indication that the district court incorrectly applied any legal standard. *See Chicago Tribune Co.*, 263 F.3d at 1309. Rather, the district

court, in determining that Robinson was not entitled to equitable tolling, properly considered whether Robinson had been adequately diligent in pursuing his federal remedy and whether his attorney had abandoned his representation of Robinson. *See Holland*, 560 U.S. at 649, 130 S. Ct. at 2562.  Given that the district court determined that an evidentiary hearing would serve no purpose, even accepting all of Robinson's allegations as true, it did not abuse its discretion in denying Robinson's request.  *Chavez*, 647 F.3d at 1060-61.

 **AFFIRMED.**